# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID PETRISOR,                    )
                                   )
                    Plaintiff,     )
                                   )
        v.                         )        1:23CV552
                                   )
D. RODGERS, J. SWARINGEN, AND R.   )
WALKER,                            )
                                   )
                    Defendants.    )
_____)

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

David Petrisor ("Plaintiff"), proceeding *pro se*[1] brought this action pursuant to 42 U.S.C. §1983, against D. Rodgers, J. Swaringen, and R. Walker ("Defendants"). (ECF No. 1 ¶ 7.) Plaintiff alleges 12 causes of action against Defendants stemming from an alleged deprivation of his Constitutional rights by oppressive police misconduct and the indifference of officials. (*Id.* ¶ 1.) Before the Court is Defendants' Motion to Dismiss and Motion to Strike. (ECF Nos. 11, 20.) In addition, before the Court is Plaintiff's Motion for Delayed Filing. (ECF No. 23.) For the reasons stated herein, Defendants' Motion to Strike will be denied. Further, Plaintiff's Motion for Delayed Filing will be granted and Defendants Motion to Dismiss will be granted in part and denied in part.

---

[1] Petrisor is a pro se litigant, thus, the Court must construe his Complaint liberally, permitting a potentially meritorious case to develop if one is present. *Chrisp v. Univ. of N.C.-Chapel Hill*, 471 F. Supp. 3d 713, 715–16 (M.D.N.C. July 10, 2020) (citation omitted). "However, the liberal construction of a pro se plaintiff's pleading does not require the court to ignore clear defects in pleading ... or to become an advocate for the pro se party ...." *Id.* at 716 (citations omitted).

## I.    BACKGROUND

Plaintiff is a citizen and resident of Guilford County, and a disabled veteran of the United States Marine Corps. (ECF No. 1 ¶¶ 1-2.) During the time in question, Plaintiff regularly visited the Guilford County Courthouse to file claims with and pay fees to the Clerk of Court. (*Id.* ¶ 9.) According to Plaintiff's Complaint, the Guilford County Courthouse "adopted a court order prohibiting the entrance of cellular phones into courtrooms" which was later amended to prohibit cellphones in the courthouse altogether. (*Id.* ¶¶ 10-11.) Guilford County installed lockboxes for visitors to lock their cellphones in before entering the courthouse. (*Id.* ¶ 13.) The charge for the use of the lockbox was $0.25 per lockbox. (*Id.*) Plaintiff allegedly attempted multiple times to express his disagreement with the new policy. (*Id.* ¶¶ 14-15.)

After repeated failed attempts to get the new policy changed, on December 8, 2020, Plaintiff rented multiple lockboxes to protest the court's policy. (*Id.* ¶ 16.) On December 14, 2020, again in protest, Plaintiff rented multiple lockboxes. (*Id.* ¶ 17.) It was on this day that Defendant Swaringen arrested Plaintiff on charges of larceny for taking the keys to the lockboxes outlined above. (*Id.* ¶ 20.) Plaintiff alleges that Defendant Swaringen applied "pain techniques" during the arrest that subjected Plaintiff to pain and impacted his preexisting medical conditions. (*Id.* ¶¶ 22-23, 27.) Once at the station, Plaintiff alleges that the officers "began to debate if Plaintiff had even committed a larceny." (*Id.* ¶ 38.) Plaintiff was detained for nearly an hour and when released he resumed renting lockboxes without any interruption from Defendants. (*Id.* ¶¶ 57-58.) The following day on December 16, 2020, Plaintiff was arrested on two warrants for larceny and booked in the Durham County Jail. (*Id.* ¶¶ 60-61.) Plaintiff was ultimately acquitted of all charges. (*Id.* ¶ 62.)

On July 3, 2023, Plaintiff filed the instant Complaint. (ECF No. 1.) He named Sheriff D. Rodgers (Sheriff Rodgers), Deputy J. Swaringen (Defendant Swaringen), and Sergeant R. Walker (Defendant Walker) as Defendants. (*Id.* ¶¶ 3-5.) On August 25, 2023, Defendants filed a Motion to Dismiss for Failure to State a Claim. (ECF No. 11.) On October 23, 2023, Plaintiff filed his Response in Opposition to the Motion to Dismiss. (ECF No. 19.)

In addition, the parties have each filed motions that may impact the Courts consideration of Defendants' Motion to Dismiss. On November 6, 2023, Defendants filed a Motion to Strike Plaintiff's Response in Opposition to Defendants' Motion to Dismiss. (ECF No. 20.) On November 27, 2023, Plaintiff filed his Motion for Delayed Filing seeking to have his Response considered by the Court. (ECF No 23.) The Motion to Strike and Motion for Delayed Filing are threshold issues that must be addressed before addressing the merits of Defendants' Motion to Dismiss. The Court therefore will next address these preliminary issues.

## II. PRELIMINARY MOTIONS

### A. Motion to Strike

Defendants filed a Motion to Strike Plaintiff's Response in Opposition to Defendants' Motion to Dismiss arguing that Plaintiff cannot prove that his late filing was the result of excusable neglect, pursuant to Rule 6(b)(1)(B). (ECF No. 21 at 4-5.) Plaintiff admits that his filing was late but argues that his late filing should be accepted because it was due to an "inadvertence of a calendaring issue" which he believes should be considered excusable neglect. (ECF. No 25 at 1.)

Rule 6(b)(1)(B) allows a court to extend time for good cause "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. Rule 6(b)(1)(B). Likewise, Local Rule 7.3(k) states that "[t]he failure to file a brief or response

3

within the time specified ... shall constitute a waiver of the right thereafter to file such brief or response, except upon a showing of excusable neglect." L.R. 7.3(k). Should this Court not find excusable neglect, Plaintiff would be deemed to have waived his right to respond as provided in Local Rule 7.3(k). *Daye v. Potter*, 380 F. Supp. 2d 718, 721 (M.D.N.C. Apr. 12, 2005) (determining that "fail[ing] to show 'excusable neglect' or any sufficient basis for failing to timely file a Response [to defendant's motion to dismiss] … Plaintiff will be deemed to have waived his right to respond as provided in Local Rule 7.3(k)").

Here, Defendants filed their Motion to Dismiss on August 25, 2023. (ECF No. 11.) According to Local Rule 7.3(f) Plaintiff's Response was due within 21 days after service of the motion. L.R. 7.3(f). However, Plaintiff filed a timely Motion for Extension of Time to File a Response on September 1, 2023. (ECF No. 17.) Plaintiff's motion asked for a 28-day extension which was granted. (Text Order dated Sept. 6, 2023.) Plaintiff's new deadline to file his Response was October 13, 2023; however, Plaintiff filed his response on October 23, 2023. (ECF No. 19 at 1.) Ultimately, Plaintiff's Response was filed ten days later than the October 13, 2023, extension deadline. It was not until after Defendants filed a Motion to Strike Plaintiff's late Response that Plaintiff filed his second Motion for Delayed Filing for the Response that was already submitted. (*See* ECF No. 23.)

The issue before this Court is whether Plaintiff's ten-day delay in filing is excusable neglect under Rule 6(b)(1)(B). "[T]he determination of excusable neglect is an equitable one, based on consideration of '[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted

4

in good faith.'" *Daye*, 380 F. Supp. 2d at 720 (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Defendants concede that the excusable neglect factors one, two, and four weigh heavily in Plaintiff's favor. (ECF No. 26 at 5.) The first factor, the danger of prejudice to the non-movant, supports a finding of excusable neglect. There is no evidence offered by either party that Defendants suffered prejudice from Plaintiff's delayed filing. (*See* ECF Nos. 21, 25, 26.) Further, a "delay in and of itself does not constitute prejudice to the opposing party." *Colleton Preparatory Acad. Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 418 (4th Cir. 2010). The second factor weighing in Plaintiff's favor is the length of delay and its potential impact on judicial proceedings. Here, the delay was ten days late and this case is not yet set for trial. Nor does Defendant contend that the delay interfered with other court proceedings. (*See* ECF Nos. 21, 26.)

Courts in this district have found excusable neglect in instances where the delay was "fairly short." *See Terry v. Swift Transp.*, No. 1:16-cv-256, 2017 WL 4236923, at *2 (M.D.N.C. Sept. 22, 2017) (finding seven days to be a "minimal delay" and in support of a finding of excusable neglect). Here, Plaintiff's Response was filed ten days (or five business days) late which this Court does not deem *per se* is a substantial amount of time under the circumstances of this case. Additionally, all briefing on the Motion to Dismiss is now complete and consideration of each brief will not result in undue delay. In sum, there was very limited effect on judicial proceedings. *See also Symbionics Inc. v. Ortlieb*, 432 F. App'x 216, 219 (4th Cir. 2011) (finding that "[a]s a general rule, the first two *Pioneer* factors will favor the moving party") (citation omitted).

5

Further, Defendants concede that the fourth factor—whether the movant acted in good faith—weighs in favor of the Plaintiff. (ECF No. 26 at 5.) Plaintiff states that his late filing was due to a calendaring error where he "transposed the 13th of October to the 23rd of October." (ECF No. 25 at 1.) This Court does not find that Plaintiff acted in bad faith in submitting his late filing. "[T]he fourth *Pioneer* factor is rarely material, as the absence of good faith is seldom at issue in the excusable neglect cases." *Ortlieb*, 432 F. App'x at 219.

The factor Defendants do not concede to is the third factor outlined above, the reason for the delay and whether it was within the reasonable control of the movant. Defendants assert that Plaintiff does not meet this factor because he committed a calendaring error and his *pro se* status should not afford him extra protections since he specifically requested the October 13, 2023, extended deadline. (ECF No. 26 at 6-7.)

The third *Pioneer* factor is the most important of the *Pioneer* factors. *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996). The Fourth Circuit has routinely held that calendaring errors fail to be considered excusable neglect. *See e.g., Agnew v. United States Leasing Corp.*, 680 F'App'x 149, 155 (4th Cir. 2017) (affirming denial of a motion to file an untimely brief based on claim that plaintiff's counsel "mistakenly calendared the wrong date"); *Ortlieb*, 432 F. App'x at 220 (finding no excusable neglect for a calendar error made by plaintiff's counsel causing filing to be one day late). However, courts do have discretion to allow late filings even where the delay was the result of inadvertence. *Pioneer*, 507 U.S. at 392.

While Plaintiff's late filing was the result of an inadvertent calendaring error, the other factors weigh heavily in Plaintiff's favor. Though Defendants argue that Plaintiff filing a motion for extension of time specifically requesting October 13th, weighs against him, this

6

Court finds that it further shows that Plaintiff's error was truly a calendaring issue. Even if this Court were to find that the third factor weighs against Plaintiff, the other three factors strongly support a finding of excusable neglect. *See Terry*, 2017 WL 4236923, at *2 (allowing an untimely filing where "the record reflects a complete absence of any sign that anything other than a good-faith mistake occurred."); *see also Pioneer*, 507 US. at 398 ("the lack of any prejudice to the [opposing party] or to the interests of efficient judicial administration, combined with the good faith of respondents…weigh strongly in favor of permitting the tardy claim.").

"[A] district court should find excusable neglect only in the extraordinary cases where injustice would otherwise result. *Thompson*, 76 F.3d at 534 (internal quotation marks omitted). Here, the harsh result that would occur should the Court strike Plaintiff's Response requires that this Court does otherwise. *See Williams v. Williams*, No. 1:20-cv-904, 2021 WL 3679613, at *4 (M.D.N.C. Aug. 19, 2021) (finding that because Defendant is proceeding *pro se* "significant prejudice would result should the court not consider his filings in support of his motion for summary judgment."). Accordingly, the Court denies Defendants' Motion to Strike Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, as it finds excusable neglect exists.

## B. Motion for Delayed Filing

After Defendants filed their Motion to Strike, Plaintiff filed a Motion for Delayed Filing asking the Court to allow his late Response in Opposition to Defendants' Motion to Dismiss. (ECF No. 23 at 1.) Plaintiff argues that he filed his Response late due to a "simple calendaring issue," the same argument he made regarding Defendants' Motion to Strike. (*Id.*) As the Court has already found that it will consider Plaintiff's Response in Opposition, his Motion

7

for Delayed Filing is granted. Therefore, in the interest of justice, based on the discussion outlined above, this Court concludes that it will, in its discretion, consider each of the parties' arguments with respect to Defendants' Motion to Dismiss.

## III.  MOTION TO DISMISS

Defendants filed a Motion to Dismiss stating that all twelve of Plaintiff's claims should be dismissed as they fail to state a claim upon which relief may be granted under Federal or State law.  (ECF No. 11 at 1-2.)  Plaintiff opposes this motion and argues that all his claims sufficiently state a claim for relief.  (*See* ECF No. 19.)

### A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2).  *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 55 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In assessing a claim's plausibility, a court must draw all reasonable inferences in the plaintiff's favor. *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013).  A claim is plausible when the complaint alleges facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  However, "mere conclusory and speculative allegations" are insufficient, *Painter's Mill Grille, LLC v. Brown*, 716

8

F.3d 342, 350 (4th Cir. 2013), and a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Vitol*, 708 F.3d at 548 (quoting *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006)).

**B.    Extrinsic Evidence**

Along with their briefs, both parties submitted exhibits that were not filed with Plaintiff's Complaint.  Defendants submitted a thumb drive of Defendant Swaringen's body worn camera video on the day of the incident.  (ECF No. 15.)  Plaintiff also submitted a thumb drive containing videos from cameras around the Guilford County Courthouse, along with audio recordings from December 8, 2023.  (ECF No. 19-1.)  This Court finds that neither thumb drive should be relied on in analyzing the instant motion to dismiss.

While extrinsic evidence is generally not considered when evaluating the sufficiency of a complaint, documents attached to a motion to dismiss may typically be considered if they are "integral to the complaint and authentic." *Phillips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  However, the Fourth Circuit views videos submitted at the motion to dismiss stage differently.  Videos submitted at the motion to dismiss stage can only be considered by district courts when the video is integral to the complaint and its authenticity is not challenged, but also only when it "clearly depicts a set of facts contrary to those alleged in the complaint or blatantly contradicts the plaintiff's allegations, rendering the plaintiff's allegations implausible." *Doriety for Estate of Crenshaw v. Sletten*, 109 F.4th 670, 679-80 (4th Cir. 2024) (citation omitted).

While Plaintiff does not challenge the authenticity of the body worn camera footage and it is likely integral to the Complaint, as he references parts of the footage in detail in his pleadings, it will not be considered.  Upon review of the body camera footage, the video does

9

not blatantly contradict Plaintiff's allegations. The video captures the interaction between Plaintiff and Defendant Swaringen, the arrest, and the events following the arrest. At no point does the footage "utterly discredit" Plaintiff's version of events. *Lewis v. Caraballo*, 98 F.4th 521, 529 (4th Cir. 2024) (citations omitted). Likewise, Plaintiff's videos from the courthouse and the audio recording do not contradict his Complaint, rather they support it. Therefore, this Court takes neither party's extrinsic evidence submissions into consideration in rendering this decision.

### C. Federal Claims for Relief

Plaintiff asserts twelve claims for relief in his Complaint. (ECF No. 1 ¶¶ 63-124.) Claims 1-6, and 12 are § 1983 claims, and claims 7-11 are state law claims. (*Id.*) The Court will now analyze each of Plaintiff's claims, beginning with his § 1983 claims, and determine whether they each state a claim for relief that is plausible on its face.

Under 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under §1983, a plaintiff must "[1] allege the violation of a right secured by the Constitution and the laws of the United States, and [2] [] show that the alleged violation was committed by a person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

Regarding the second element of a §1983 claim—the alleged violation was committed by a person acting under the color of state law—an individual acts under color of state law when exercising or misusing power "possessed by virtue of state law and made possible only

10

because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941) (citations omitted). Further, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 50.

1.  Plaintiff Fails to State Any § 1983 Claim Under the Fourteenth Amendment

Plaintiff seeks to fulfill the first requirement by alleging violations of his rights secured by the First, Fourth, and Fourteenth Amendments. (*See* ECF No. 1 ¶¶ 62, 69, 75, 80, 84.) Five of Plaintiff's federal claims state the Fourteenth Amendment as a basis for the claim along with either the First or Fourth Amendment. Those claims are: (1) arrest without probable cause in violation of the Fourth and Fourteenth Amendments; (2) excessive force in violation of the Fourth and Fourteenth Amendments; (3) unreasonable search in violation of the Fourth and Fourteenth Amendments; (4) retaliatory arrest in violation of the First and Fourteenth Amendments; and (5) deliberately indifferent policies, practices, customs, hiring, and training in violation of the Fourth and Fourteenth Amendments. (ECF No. 1 ¶¶ 62, 69, 75, 80, 84.) While Plaintiff alleges a violation of the Fourteenth Amendment in all five claims, he only articulates specific facts setting forth the basis and nature of the Fourteenth Amendment claim for one of his five claims, arrest without probable cause. (*See* ECF No, 1 ¶¶ 63-69.)

In his Complaint under arrest without probable cause, Plaintiff states that his arrest "was compounded when Defendant [Swaringen] not only continued the prosecution without probable cause but added additional fabricated charges in an effort to justify his actions. This is a distinct violation of the Fourth and Fourteenth Amendments." (*Id.* ¶ 67.) Plaintiff's assertion that Defendant Swaringen "fabricated charges" leads this Court to believe that he is

attempting to articulate a basis for his Fourteenth Amendment claim under this cause of action.

Under the Fourteenth Amendment, state actors shall not deprive any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV § 1. Plaintiff's Fourteenth Amendment claim begins after his arrest as "[a]t some point after a person is arrested, the question whether his continued confinement or prosecution is unconstitutional passes over from the Fourth Amendment to the due process clause." *Massey v. Ojaniit*, 759 F.3d 343, 356 n. 6 (4th Cir. 2014) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988)).

To sufficiently allege a Fourteenth Amendment claim based on alleged fabricated charges, Plaintiff must plead adequate facts to establish that his loss of liberty resulted from the fabrication, and that his conviction was a reasonably foreseeable result of the fabrication. *Massey*, 759 F.3d at 354 (citations omitted). While Plaintiff states that fabricated charges were added, he does not allege or state any facts pertaining to his conviction being a reasonably foreseeable result. As such, his Fourteenth Amendment claim for arrest without probable cause is dismissed.

Additionally, Plaintiff's four other causes of action alleging Fourteenth Amendment violations, claims two through five, are dismissed because Plaintiff does not articulate any facts setting forth the basis and nature of his alleged Fourteenth Amendment claims. (*See* ECF No. 1 ¶¶ 70-97.) Although Plaintiff is *pro se* and his Complaint is to be "liberally construed," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), this Court is not required to "conjure up questions never squarely presented to [it]. District Judges are not mind readers." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Thus, the Court will dismiss all of Plaintiff's Fourteenth Amendment claims for failure to state a claim upon which relief may be granted. Because, however, Plaintiff has also alleged a separate constitutional basis (either the First or Fourth Amendment) for claims one through five, the Court will next determine whether Plaintiff has sufficiently stated a § 1983 claim, with respect to his first five claims, on a basis other than the Fourteenth Amendment.

2.    Plaintiff Fails to State a Claim of Arrest Without Probable Cause

With respect to Plaintiff's first cause of action, the Court will only address whether Plaintiff has sufficiently alleged whether he was arrested without probable cause under the Fourth Amendment, in that the Fourteenth Amendment claim has previously been dismissed. Plaintiff alleges that he was arrested without probable cause in violation of the Fourth Amendment against Defendant Swaringen in his individual capacity. (ECF No. 1 ¶ 62.) Defendants argue that Defendant Swaringen had probable cause to arrest Plaintiff because Plaintiff satisfies all the elements of larceny, injury to personal property, and resisting, obstructing, or delaying a public officer discharging an official duty ("RDO"). (ECF No. 12 at 10-16.) In the alternative they argue that even if there was no probable cause, Defendant Swaringen is protected by qualified immunity. (*Id.* at 14-16.) Plaintiff counters that Defendant Swaringen did not have probable cause to arrest him because he purchased the keys and therefore committed none of the crimes for which he was charged. (*See* ECF No. 19 at 4, 7, 8.)

The Fourth Amendment protects individuals from unreasonable searches and seizures by the government. U.S. Cont. amend. IV. A warrantless arrest by law enforcement is reasonable under the Fourth Amendment when there is probable cause to believe that a criminal offense has been or is being committed. *United States v. Watson*, 423 U.S. 411, 417

13

(1976); *see also Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). The determination of probable cause is considered using the "totality-of-the-circumstances" present in a case. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

The two inquiries for probable cause are the "suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). An arresting officer's state of mind—except for the facts that he has knowledge of—is irrelevant to probable cause. *See Whren v. United States*, 517 U.S. 806, 812-14 (1996). Upon his arrest, Plaintiff was made aware he was being arrested for larceny and RDO. This Court will analyze whether Plaintiff's Complaint states a claim that Defendant Swaringen lacked probable cause for either of these offenses.

> a. Plaintiff Sufficiently Alleges that Defendant Swaringen Lacked Probable Cause to Arrest Him for Larceny

Under North Carolina law, to obtain a larceny conviction one must prove that the individual "(1) took the property of another; (2) carried it away; (3) without the owner's consent, and (4) with the intent to deprive the owner of the property permanently." *U.S. v. Jarmon*, 596 F.3d 228, 230 (4th Cir. 2010) (quoting *State v. Rawlinson*, 679 S.E.2d 878, 882 (N.C. Ct. App. 2007)).

In construing the allegations in Plaintiff's Complaint in his favor, which this Court is required to do, Plaintiff sufficiently alleges the first two elements of larceny. Regarding the first element, — took the property of another — Plaintiff alleges in his Complaint that he took the keys that belonged to Guilford County. The element of taking requires that the accused have the goods "in his possession, or under his control, even if only for an instant." *State v.*

14

*Carswell*, 249 S.E.2d 427, 429 (N.C. 1978). In his Complaint, Plaintiff states that "[o]n December 14th, 2020, Plaintiff. . . .resumed his protest by renting multiple lockboxes." (ECF No. 1 ¶ 17.) In renting the lockboxes, Plaintiff took the keys belonging to Guilford County as after his arrest he asked if Defendants "could return the rented keys to his person "and even "requested a receipt for the keys taken from his person." (*Id.* ¶ 56.)

Regarding the second element, — carried it away — Plaintiff's Complaint alleges that Plaintiff rented the keys and pocketed them during his protest. Although on December 14th Plaintiff did not fully leave the premises with the keys, carrying away does not require that the "property be completely removed from the premises of the owner." *State v. Gilbert*, No. COA06-16, 2006 WL 3490230, *3 (N.C. Ct. App. 2006). The property no longer being under the control of the owner is sufficient for a carrying away to have occurred. *Id.* Thus, Plaintiff's Complaint alleges that he carried the keys away.

However, Plaintiff's Complaint does not sufficiently allege that he took the keys without the owner's consent, the third element of larceny. Defendants argue that "common sense requires" that the consent given to patrons renting the lockboxes is temporary for "the specific purpose of safeguarding personal property while attending to Courthouse business." (ECF No. 12 at 11.) However, nothing in the Complaint alleges the existence of any signage that placed rules on the use of the lockers. (*See* ECF No. 1.) In fact, the Complaint alleges that Plaintiff questioned Defendant Swaringen about any signage stating that he had to return the property to which Defendant replied, "there is no physical sign." (ECF No. 1 ¶ 53.) Additionally, while the manner in which lockboxes operate requires patrons to pocket the key and walk away from the lockers, nothing in the Complaint supports an inference that Plaintiff took the keys without the consent of the County.

15

Additionally, the Complaint does not sufficiently allege that Plaintiff intended to permanently deprive the Courthouse of its property. The fourth element of larceny, intent to permanently deprive, is often inferred from circumstantial evidence rather than direct proof; however, "[s]omething more than the mere act of taking is necessary." *State v. Foy*, 42 S.E. 934, 935 (N.C. 1902). Nothing in the Complaint leads this Court to believe that Plaintiff intended to permanently keep the keys as Plaintiff states in his Complaint that "he was . . . still renting those boxes," therefore he would, by virtue of use of the lockers, still be in possession of the keys. (ECF No. 1 ¶ 53.) Additionally, nothing in the Complaint supports a finding that Plaintiff would never return the keys. (*See* ECF No. 1.)

Further, this Court does not find that a reasonable officer would believe a larceny was committed when analyzing the totality of the circumstances. In viewing the Complaint, Plaintiff's objective in protesting was to inconvenience the County, not to commit a larceny, as Plaintiff paid money for each key. According to the Complaint, Defendant Swaringen observed Plaintiff paying to rent the lockboxes and he acknowledged that there was no signage on or near the lockers outlining rules regarding the use of the lockboxes. Thus, the Court concludes that the Complaint alleges sufficient facts to find that Defendant Swaringen lacked probable cause to arrest Plaintiff on the charge of larceny.

        b.      Plaintiff Fails to Sufficiently Allege that Defendant Swaringen Lacked Probable Cause to Arrest him for RDO

Although Plaintiff alleges that Defendant Swaringen lacked probable cause for the charge of RDO, the Court finds otherwise. The elements of this offense are: (1) the victim was a public officer; (2) the arrestee knew or had reasonable grounds to believe that the victim was a public officer; (3) the victim was discharging or attempting to discharge a duty of his office; (4) the arrestee resisted, delayed, or obstructed the victim in discharging or attempting

16

to discharge a duty of his office; and (5) the arrestee acted willfully and unlawfully, that is intentionally and without justification or excuse. *State v. Harper*, 877 S.E.2d 771, 776-77 (N.C. Ct. App. 2022) (internal quotations omitted) (citations omitted).

The first two elements have been alleged as the Complaint alleges that Defendant Swaringen approached Plaintiff and accused him of committing a crime. (ECF No. 1 ¶ 17.) It is clear from the Complaint that Plaintiff knew that Defendant Swaringen was a public officer, and Plaintiff does not dispute these elements in his Response. The third element is met because conducting investigatory stops is a duty of a police officer. *See Terry v. Ohio*, 392 U.S. 1, 10 (1968) (finding that police should be "allowed to 'stop' a person and detain him briefly for questioning upon suspicion that he may be connected with criminal activity."). Defendant Swaringen told Plaintiff that they "needed to talk" and that Plaintiff "was going to come inside the courthouse" with him and informed Plaintiff that he was being detained. (ECF No. 1 ¶ 19.) It is clear from the allegations in the Complaint that Defendant Swaringen was conducting an investigatory stop because he believed Plaintiff was committing a larceny. (*See* ECF No. 1 ¶ 17.)

The fourth element—that the arrestee resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office—is also met according to the Complaint. During the encounter, Plaintiff states that he told Defendant Swaringen to back away from him numerous times then moved away from Defendant Swaringen. (ECF No. 1 ¶ 20.) Although refusing an officer's commands alone is not enough, when it is accompanied by disruption to the officer's duties, RDO is met. *State v. Leigh*, 179 S.E.2d 708, 713 (N.C. 1971). Here, Plaintiff was aware that he was detained, and that Defendant Swaringen wanted to ask him questions, and he physically moves away.

17

For the last element, the Complaint alleges sufficient facts that show that Plaintiff acted willfully and unlawfully. To prove willfulness, evidence must be presented that the Plaintiff acted "purposely and deliberately in violation of the law." *State v. Peters*, 804 S.E.2d 811, 816 (N.C. Ct. App. 2017) (quoting *State v. Arnold*, 141 S.E.2d 473, 474 (N.C. 1965)). Willfulness is defined as "a state of mind which is seldom capable of direct proof, but which must be inferred from the circumstances of the particular case." *State v. Davis*, 356 S.E.2d 607, 610 (N.C. App. Ct. 1987) (citation omitted). Here, Plaintiff admits that he moved away from the officer. (ECF No. 1 ¶ 19.) While moving away alone is not sufficient, Plaintiff did so after he was told he was being detained. (*See* ECF No. 1 ¶ 20.) Further, an individual moving away from an officer is evidence of flight. *State v. Butler*, 415 S.E.2d 719, 722 (N.C. 1992) (finding that defendant making eye contact with officer and then walking away was evidence of flight giving the officer reasonable suspicion to make a lawful stop).

Plaintiff argues that any movement he made to distance himself from Defendant Swaringen was well within his rights because there was never a crime of larceny to investigate in the first place. (ECF No. 19 at 7.) Plaintiff is correct that a person is entitled to resist an illegal arrest. *State v. McGowan*, 90 S.E.2d 703, 704 (N.C. 1956); *see also State v. White*, 214 N.C. App. 471, 479 (2011) (finding that an individual's subsequent flight from a "consensual encounter or from an unlawful investigatory stop [lacking reasonable suspicion] cannot be used to justify his arrest for resisting, delaying, or obstructing a public officer."). However, flight from a lawful investigatory stop "may provide probable cause to arrest an individual for violation of [RDO]." *State v. Lynch*, 380 S.E.2d 397, 399 (N.C. 1989). That is what we have here, according to the Complaint Defendant Swaringin was conducting a lawful investigatory stop when Plaintiff began moving away. Defendant Swaringen had suspicion that Plaintiff

may be connected with criminal activity because he previously took keys from the lockbox, and he observed Plaintiff taking multiple keys on the day in question. (*See* ECF No. 1 ¶ 18.)

According to the allegations in the Complaint, the Court finds that Plaintiff's flight from Defendant Swaringen's lawful investigatory stop provided probable cause for Plaintiff to be arrested for RDO. As the facts in the Complaint show that Defendant Swaringen had the necessary probable cause to arrest, this Court will not examine whether probable cause existed for Plaintiff's third criminal charge of injury to personal property. Further, as probable cause was found, Plaintiff's claims for malicious prosecution and false arrest fail as a matter of law. *See Allen v. City of Dunn*, 708 F. Supp. 3d 743, 752 (E.D.N.C. Dec. 27, 2023) ("because probable cause existed to arrest plaintiff for RDO, plaintiff's claims for malicious prosecution and false arrest fail as a matter of law.").

c.    Defendant Swaringen is Shielded by Qualified Immunity

Even if for the sake of argument Defendant Swaringen did not have probable cause to arrest, Defendants contend that he is protected by qualified immunity. Qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). The purpose of qualified immunity is to allow some discretionary judgment in difficult circumstances and to not have the prospect of being blind-sided in hindsight or discourage officers from the constructive tasks they can in fact perform. *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 357 (4th Cir. 2010). "Officers will not be held liable, even if they violate a statutory or constitutional right, unless they had prior guidance which would allow them to determine that their contemplated action was improper." *Id.*

In analyzing qualified immunity, courts must answer two questions: (1) has the plaintiff established that, when viewing the evidence most favorable to him, the officers violated his constitutional rights; and if the answer to the first inquiry is in favor of the Plaintiff, then (2) have the officers shown that the asserted rights were not clearly established by law at the time of the interaction. *Stanton v. Elliot*, 25 F.4th 227, 233 (4th Cir. 2022). The second inquiry really analyzes whether Defendants established that it was not "clear to a reasonable officer that the conduct in which [Defendant] allegedly engaged was unlawful in the situation he confronted." *Merchant v Bauer*, 677 F.3d 656, 662 (4th Cir. 2012) (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)) (internal quotations omitted). In the Fourth Circuit, the qualified immunity defense has a split burden. *Stanton*, 25 F.4th at 233. Plaintiff bears the burden on the first prong and Defendant Swaringen will bear the burden on the second prong. *Id.*

Defendants use qualified immunity as a defense to this cause of action. Using the standards outlined, this Court must determine whether Defendant Swaringen, in arresting Plaintiff, violated Plaintiff's clearly established rights of which a reasonable person would have known. The right implicated is Plaintiff's Fourth Amendment right to be free from unreasonable seizures, specifically an unlawful seizure of one's person, or arrest.

As the Court found that Plaintiff did not sufficiently allege that Defendant Swaringen violated Plaintiff's rights under the Fourth Amendment, the first prong has not been satisfied, thus the Court need not address the second prong, i.e., whether such rights were clearly established as the time of the interaction.

The Court therefore concludes that, Plaintiff has failed to plausibly allege that Defendant Swaringen lacked probable cause to arrest Plaintiff; and that Defendant Swaringen

is entitled to qualified immunity relating to this claim. Thus, Plaintiff's first cause of action is dismissed.

3.    <u>Plaintiff Sufficiently Alleges a Claim of Excessive Force</u>

With respect to Plaintiff's second cause of action, the Court will only address whether Plaintiff has sufficiently alleged a claim of excessive force under the Fourth Amendment, in that the Fourteenth Amendment claim has previously been dismissed. Plaintiff's second § 1983 claim is excessive force in violation of the Fourth Amendment against Defendant Swaringen in his individual capacity. Here Plaintiff alleges that Defendant Swaringen engaged in excessive force when he "threw Plaintiff against a glass [] door," "twisted his arm applying a pain compliance technique," and "struck Plaintiff's feet off a table." (ECF No. 1 ¶¶ 71-72.)

Defendants argue that some use of force was justified here because of the nature of the crime, Plaintiff posing a potential threat because of his size and demeanor, and Plaintiff allegedly attempting to leave the scene. (ECF No. 12 at 17.) Plaintiff counters that he posed no threat to Defendant Swaringen. (ECF No. 19 at 11.)

Whether an officer exercised excessive force is judged by an objective standard. *Elliot v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996). Courts do not look into officer's motives or intentions, they look to determine "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396-97(1989)). This requires a careful look into the facts and circumstances of each case. *Graham*, 490 U.S. at 396. *Graham* outlines three factors that provide a useful framework for evaluating whether an officer's conduct was objectively reasonable; "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate

Case 1:23-cv-00552-LCB-LPA    Document 29    Filed 02/11/25    Page 21 of 39

threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.*

The first two *Graham* factors weigh heavily in Plaintiff's favor. In addressing the first factor, Defendants argue that the crime here was minor but was compounded by its repeated nature. (ECF No. 12 at 17.) This Court finds that the "severity" of the purported crime was low according to the allegations in the Complaint. Plaintiff was arrested for larceny of keys, and while larceny is a crime, its severity in this case appears minor. Although the Complaint states that this was Plaintiff's second time protesting in this manner, the Court is not convinced that because it happened twice the alleged crime became more severe. *See Jones v. Buchanan*, 325 F.3d 520, 528 (4th Cir. 2003) (finding that "even in a case in which the plaintiff had committed a crime, when the offense was a minor one…the first *Graham* factor weighed in [the] plaintiff's favor") (internal quotations omitted).

The second factor also weighs in Plaintiff's favor because Plaintiff's form of protest posed no safety threat. Defendants argue that Plaintiff is a large man and reacted angrily toward Defendant Swaringen. (ECF No. 12 at 17.) Plaintiff counters that Defendant Swaringen is "considerably larger" than him. (ECF No. 19 at 11.) Nothing in the Complaint shows that Plaintiff posed a safety threat or supports that any safety threat may be based off the size of either party. Further, the Complaint states that Plaintiff was detained in an area with little to no people around and he was holding a quarter in his hand. (ECF No. 1 ¶ 20.)

The last factor weighs against Plaintiff. Although Plaintiff alleges that he moved away from the officer because he was attempting to put space in between them, this Court finds that even when viewing the facts in the Complaint as true, a reasonable officer in Defendant Swaringen's position could have assumed he was trying to evade arrest. Even in taking

Plaintiff's motivations for moving away as true, he moved away after Defendant Swaringen notified him that he was being detained.

Therefore, this Court finds that the first two Graham factors weigh in Plaintiff's favor, and the last one does not. However, the three Graham factors are not "exclusive." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Courts must consider "the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 497. Accordingly, this Court will also consider the other circumstance present in this case, Plaintiff's preexisting medical condition.

Plaintiff alleges that Defendant Swaringen's actions during the arrest caused him pain due to his physical injury of torn tendons in his shoulders. (ECF No. 1 ¶¶ 26-27.) According to the Complaint, Plaintiff repeatedly made Defendant Swaringen aware of his medical condition, repeatedly told Defendant Swaringen that he was in pain, and requested to be handcuffed in a different way. (*Id.* ¶ 28.) It is important to note that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. However here, the degree of physical coercion continued after Plaintiff was already placed in handcuffs, as described below.

Courts have found that handcuffing an arrestee behind their back can constitute a constitutional violation if the handcuffing causes pain and injury as a result of a known medical condition. *See Stutzman v. Krenik*, 350 F. Supp. 3d 366, 382 (D. Md. Oct. 10, 2018) (finding a claim for excessive force where the Plaintiff had a visible medical condition, requested to be handcuffed in front his body, and screamed in pain when handcuffed behind his back). Defendants do not dispute that Defendant Swaringen not only handcuffed Plaintiff, but placed

his hands in a position that Defendant's labelled as a "twist lock."[2]  Given the two Graham factors that weigh in Plaintiff's favor, Plaintiff's medical condition that he made known to Defendant Swaringen, and the use of the twist lock, the Complaint sufficiently alleges a claim of excessive force pertaining to the arrest.

Thus, on this claim, Plaintiff has sufficiently alleged a violation of a right secured by the Constitution, which, as stated above, satisfies the first element of a § 1983 claim.  The Court will now determine whether Plaintiff's Complaint sufficiently alleges the second element of a § 1983 claim, that the violation was committed by a person acting under the color of state law.

As previously stated, an individual acts under color of state law when exercising or misusing power, "possessed by virtue of state law." *Classic*, 313 U.S. at 326.  Plaintiff in his Complaint alleges Defendant Swaringen was employed by Gilford County during the relevant time as a Deputy.  (ECF No. 1 ¶ 4.)  Therefore, the power Defendant Swaringen possessed by virtue of state law is from his job as a Deputy of Guilford County Sheriff's Office.

Further, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 49.  Plaintiff alleges excessive force against Defendant Swaringen in his individual capacity; therefore, this Court will examine whether he was "exercising his responsibilities pursuant to state law."  *See id.*  Under this claim, the Complaint details Defendant Swaringen's alleged actions during his arrest of Plaintiff.  This meets the second element because the arrest of an individual is a law enforcement officer's exercise of a responsibility pursuant to state law.  *See*

---

[2] Defendants define a "twist lock" as a control hold applied by grabbing and twisting a suspect's hand to gain tension on the arm.  (ECF No. 12 at 17.)

*Pruitt v. Purnell*, 360 F. Supp. 2d 738, 744 (E.D.N.C. Jan. 5, 2005) (finding that the threat of arrest is one of the purest acts of state authority). Accordingly, Plaintiff has sufficiently alleged the second element of his § 1983 claim.

In viewing the allegations in the Complaint in the light most favorable to Plaintiff, the Court finds that he has stated a plausible claim of excessive force under the Fourth Amendment.

4.    Plaintiff Fails to State a Claim of Unreasonable Search

With respect to Plaintiff's third cause of action, the Court will only address whether Plaintiff has sufficiently alleged a claim of unreasonable search under the Fourth Amendment, in that the Fourteenth Amendment claim has previously been dismissed. Plaintiff alleges that Defendant Swaringen, in his individual capacity, conducted an unreasonable search in violation of his Fourth Amendment rights. (ECF No. 1 ¶¶ 76-80.) Defendants argue that this claim should be dismissed because the search was a constitutional search incident to arrest. (ECF No. 12 at 18.)

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A search under the Fourth Amendment occurs when the government invades a person's constitutionally protected reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 351 (1967). A warrantless search is invalid unless it falls within one of the exceptions to the Fourth Amendment's warrant requirement. *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999) (citation omitted).

One of the exceptions to the warrant requirement is a "search incident to arrest." *United States v. Robinson*, 414 U.S. 218, 224 (1973). "When an arrest is made, it is reasonable

25

for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *Chimel v. California*, 395 U.S. 752, 762-63 (1969). Additionally, officers can search for and seize any evidence on the arrestee's person to prevent its concealment or destruction. *Id.* at 763.

Here, Plaintiff alleges that Defendant Swaringen violated his Constitutional rights when he searched his person after his arrest. (ECF No. 1 ¶ 79.) The Complaint alleges that this search was unconstitutional because Defendant Swaringen did not have probable cause for the arrest and had no search warrant. (*Id.*)

As the Court has concluded that the Complaint fails to state a claim that Defendant Swaringen lacked probable cause to arrest Plaintiff, this search amounts to a search incident to arrest. *See United States v. Currence*, 446 F.3d 554, 556 (4th Cir. 2006) (holding that "when law enforcement officers have probable cause to make a lawful custodial arrest, they may — incident to that arrest and without a warrant — search the arrestee's person and the area within his immediate control.") (internal quotations omitted) (citations omitted).

Thus, the Court finds that Plaintiff does not allege sufficient facts to state a claim for unlawful search.

5.    <u>Plaintiff Fails to State a Claim of Retaliatory Arrest</u>

With respect to Plaintiff's fourth cause of action, the Court will only address whether Plaintiff has sufficiently alleged a claim of retaliatory arrest under the First Amendment, in that the Fourteenth Amendment claim has previously been dismissed. Plaintiff alleges that Defendant Swaringen in his individual capacity violated his First Amendment rights by arresting him in retaliation of his protest. (ECF No 1 ¶¶ 81-84.) Defendants argue that Plaintiff's claim of retaliatory arrest should be dismissed because Plaintiff's acts were not forms

26

of expression and his arrest is supported by probable cause. (ECF No. 12 at 19.) Plaintiff counters that he was arrested while conducting a peaceful protest and there was no probable cause to arrest. (ECF No. 19 at 13.)

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions" because they engaged in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). When an official takes adverse action against someone based on retaliation, the injured person may seek relief by bringing a First Amendment claim. *Id.* To bring a retaliatory arrest claim, Plaintiff must show (1) the subjective animus of an officer, (2) a subsequent injury, and (3) that the decision to press charges was objectively unreasonable because it was not supported by probable cause. *Nives v. Bartlett*, 587 U.S. 391, 400-01 (2019).

Regardless of Defendant Swaringen's subjective animus or Plaintiff's subsequent injuries, Plaintiff failed to allege a lack of probable cause in this case, the third element of a retaliatory arrest claim. Here, as the facts in the Complaint support that Defendant Swaringen had probable cause to arrest Plaintiff, the retaliatory arrest charge fails as a matter of law. *See Hulbert v. Pope*, 70 F.4th 726, 738 (4th Cir. 2023) ("[a] First Amendment retaliatory arrest claim fails as a matter of law if there was probable cause for the arrest.") (internal quotations omitted) (citations omitted).

Therefore, Plaintiff fails to sufficiently allege a claim of retaliatory arrest.

6. <u>Plaintiff Fails to State a Claim of Deliberately Indifferent Policies</u>

With respect to Plaintiff's fifth cause of action, the Court will only address whether Plaintiff has sufficiently alleged a claim of deliberately indifferent policies under the Fourth Amendment, in that the Fourteenth Amendment claim has previously been dismissed. Plaintiff alleges that Sheriff Rodgers engaged in deliberately indifferent policies, practice,

customs, hiring, and training in violation of the Fourth Amendment. (ECF No. 1 ¶ 84.) Plaintiff filed this claim against Sheriff Rodgers in his official capacity; therefore, this claim is against the GCSO, as discussed above. Defendants argue that this claim should be dismissed because Plaintiff has not alleged any policy attributable to Sheriff Rodgers, there is no widespread pattern or practice of misconduct, and he fails to allege specific deficiencies in training, among other things. (ECF No. 12 at 20-23.)

A claim for deliberately indifferent policies or practices against a municipality in violation of one's constitutional rights is analyzed as a 'Monell claim.' Under Monell, a municipality is liable only for its own illegal actions. Monell v. Dep't Soc. Servs. Of City of New York, 436 U.S. 658, 691 (1978). Municipalities are liable under § 1983 based on unconstitutional actions of individual defendants where those defendants were executing an official policy or custom of the local government that violated plaintiff's rights. Id. at 690-92. Plaintiffs seeking to "impose liability on a municipality must…adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." Jordan by Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994).

Although the Complaint is full of instances that Plaintiff believes Sheriff Rodgers failed to act, Plaintiff does not clearly allege any specific policies or customs that were the proximate cause of the deprivation of his rights, as required for a Monell claim. A policy or custom for which a municipality may be held liable for can be shown: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that

28

is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Lytle v. Doyle*, 326 F. 3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

Plaintiff does not allege in his Complaint either of the first two examples of a policy or custom. He does not allege any express policies or decisions of persons with policymaking authority. (*See* ECF No 1 ¶¶ 85-97.) However, it does appear that Plaintiff has alleged the other two examples of a policy or custom—that Defendants should be held liable through an omission and through a widespread practice.

First, Plaintiff alleges that GCSO should be held liable through a widespread and persistent practice. Plaintiff states that members of the GCSO violated city ordinances related to parking. (ECF No. 1 ¶ 90.) Plaintiff has allegedly filed over fifty complaints against employees of the GCSO for parking in no parking or tow away zones. (*Id.* ¶ 91.) He alleges that he was informed that "no GCSO employees would be reprimanded as it was a company wide violation, meaning the violations were so widespread amongst the GCSO, that individuals caught on camera violating this state statue would not be disciplined." (*Id.*) Plaintiff also points to instances of questionable conduct or allegations of misconduct against the GSCO that have appeared in lawsuits. (*Id.* ¶ 87.) During Sheriff Rodgers' tenure, Plaintiff alleges that there have been four federal lawsuits filed alleging various violations of civil rights. (*Id.*) Prior to Sheriff Rodgers' tenure, Plaintiff alleges that there have been at least twelve lawsuits. (*Id.* ¶ 88.)

To state a claim of deliberately indifferent polices, Plaintiff cannot simply assert violations, he must also allege a "close causal link" between the "training deficiency...and [the] specific violation." *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987). The "affirmative

29

link" between the policy or custom and the violation "must be proximate, not merely but for causation-in-fact." *Id.* at 1388 (internal quotations omitted) (citations omitted).

Here, Plaintiff does not allege a causal connection between the alleged policies and customs and his alleged constitutional violation. Plaintiff does not allege a close causal link between the lawsuits he cites to and the instant matter. (ECF No. 1 ¶¶ 87-88.) He only states that the lawsuits should have "put [Sheriff] Rodgers on notice of the need for different or additional training." (*Id.* ¶ 89.) Additionally, Plaintiff does not allege any link between the fifty parking complaints and his injury. (*See id.* ¶¶ 85-97.)

Therefore, Plaintiff fails to allege a claim of deliberately indifferent policies in violation of his rights under the Fourth Amendment.

### 7. Plaintiff Fails to State a Claim of Supervisory Liability

Plaintiff's sixth cause of action is supervisory liability against Sheriff Rodgers in his individual and official capacities, and his twelfth cause of action is supervisory liability against Defendant Walker in his individual and official capacities. (ECF No. 1 ¶¶ 97, 120.) Defendants argue that Plaintiff's allegations toward Sheriff Rodgers fail for the same reasons as his *Monell* claim, and that his claims against Defendant Walker fail because they are redundant and qualified immunity should apply. (ECF No. 12 at 24, 28.)

Plaintiff's claims against both Defendants in their official capacity fail because supervisory liability claims are brought against Defendants in their individual capacity not their official capacity. *Simmons v. Corizon Health, Inc.*, 122 F. Supp. 3d 255, 267 (M.D.N.C. Aug. 4, 2015) ((citing *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987)). Therefore, both supervisory liability claims in Defendants official capacity are dismissed. The Court will now analyze the claim under each Defendants individual capacity.

Supervisory officials may be held liable for the constitutional injuries caused by their subordinates. *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). There are three elements necessary to state a claim for supervisory liability under § 1983: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisors inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotations omitted) (citations omitted).

To establish the first element, Plaintiff must show the supervisors knowledge of the conduct engaged in by a subordinate where the conduct poses a pervasive and unreasonable risk of constitutional injury to plaintiff. *Shaw*, 13 F. 3d at 799 (citation omitted). To show that the conduct posed a pervasive and unreasonable risk, plaintiff must show that the conduct is "widespread, or at least has been used on several different occasions, and…the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* To establish the second element a plaintiff may demonstrate a "supervisor's continued inaction in the face of documented widespread abuses." *Slakan*, 737 F. 2d at 373. For the last element, causation can be established by proximate cause. *Shaw*, 13 F.3d at 799.

a.     Plaintiff Does Not Sufficiently State a Claim for Supervisory Liability Against Sheriff Rodgers

Regarding Sheriff Rodgers, Plaintiff's basis for the supervisory liability charge is that "employees of the GCSO had numerous allegations of misconduct, excessive force, and false arrest…prior to the events described in this Complaint." (ECF No. 1 ¶ 99.) Plaintiff states

31

that Sheriff Rodgers knew about these allegations and took no action to prevent further misconduct by employees.  (*Id.* ¶ 101.)

Plaintiff fails to allege the first element of supervisory liability because the previous lawsuits he alleges Sheriff Rodgers is named in do not pose a pervasive and unreasonable risk of constitutional injury to Plaintiff.  Plaintiff lists four lawsuits that took place during Sheriff Rodgers tenure and states "[t]he nature of these lawsuits alleges numerous violations of civil rights."  (ECF No. 1 ¶ 87.)  Out of the four complaints, three of them have allegations relating to incidents in Guilford County detention centers and jails, none of which is relevant here.  *See Jones v. Alvarez*, No. 1:19CV930, 2021 WL 796509, at *5 (M.D.N.C. Mar. 2, 2021) (finding that plaintiff failed to meet the first element of supervisory liability against defendants, Greensboro police officers, because he provided articles that were not relevant to his injuries and did not establish a pattern around when the events in question took place).  Plaintiff is unable to establish that Sheriff Rodgers' knowledge of any of these lawsuits posed a pervasive and unreasonable risk of injury to Plaintiff.

Plaintiff also fails to sufficiently allege the second element, that Sheriff Rodgers response was so inadequate that it shows deliberate indifference to or tacit authorization of the allegations of misconduct excessive force, and false arrest.  Plaintiff does not plausibly assert any continued inaction that Sheriff Rodgers engaged in similar to Plaintiff's injuries.  *See Stafford v. Barnes*, No. 1:14cv267, 2014 WL 5819380, at *6 (M.D.N.C. Nov. 10, 2014) (finding that plaintiff failed to allege sufficiently deliberate indifference where "there [we]re simply no allegation of documented abuse").

Lastly, Plaintiff does not demonstrate a causal link between Sheriff Rodgers' alleged inaction and Defendant Swaringen's conduct, the third element of his supervisory liability

claim. Plaintiff merely makes conclusions that Sheriff Rodgers "took no action, or no effective action." *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013) (finding that "mere conclusory and speculative allegations" are insufficient to survive a Rule 12(b)(6) motion to dismiss). Therefore, Plaintiff's supervisory liability claim against Sheriff Rodgers is dismissed.

b.  Plaintiff Fails to State a Claim of Supervisory Liability Against Defendant Walker

Regarding Defendant Walker, Plaintiff alleges that Defendant Walker was aware of Defendant Swaringen's violation of his constitutional rights and acquiesced by providing him with an alternative charge to justify a violation of Plaintiff's rights. (ECF No. 1 ¶ 122.) Plaintiff fails to sufficiently allege the first element, actual or constructive knowledge. Plaintiff states that Defendant Walker was told about Defendant Swaringen attempting to charge Plaintiff with larceny, and Defendant Walker knew that the action did not constitute larceny. However, Plaintiff does not allege that the conduct posed a pervasive and unreasonable risk. (*See* ECF No. 1 ¶ 122.) Plaintiff does not show that the alleged conduct occurred on several different occasions. *See Shaw*, 13 F. 3d at 799 (finding that to show a pervasive and unreasonable risk, plaintiff must show that the conduct is "widespread, or at least has been used on several different occasions") (citation omitted).

Similarly, Plaintiff does not allege that Defendant Walker's inadequate response constitutes deliberate indifference, the second element, because this is only one instance of Defendant Walker taking no action to stop the alleged violation of Plaintiff's rights. To sufficiently allege the second element Plaintiff would have to allege that there was "continued inaction." *Slakan*, 737 F. 2d at 373. Although Plaintiff has alleged previously in his Complaint

33

that there have been other civil rights lawsuits, nowhere in his Complaint does he associate those lawsuits with Defendant Walker.

Lastly, Plaintiff fails to allege an affirmative causal link, the third element, between Defendant Walker's alleged inaction and Defendant Swaringen's conduct. Plaintiff states that Defendant Walker knew that larceny was not the correct charge and did not "attempt to correct Defendant Swaringen." (ECF No. 1 ¶ 122.) However, as stated this was only one instance of inaction. As Plaintiff fails to sufficiently allege the elements of supervisory liability pertaining to Defendant Walker, his supervisory liability claim is dismissed.

c.     Defendant Walker is Entitled to Qualified Immunity

Defendants also argue that Defendant Walker is entitled to qualified immunity on this claim. Although this Court has found that the claim should be dismissed, it will still analyze whether qualified immunity exists.

As stated above, in analyzing qualified immunity courts must answer two questions: (1) has the plaintiff established that, when viewing the evidence most favorable to him, the officers violated his constitutional rights; and if the answer to the first inquiry is in favor of the Plaintiff, then (2) have the officers shown that the asserted rights were not clearly established by law at the time of the interaction. *Stanton v. Elliot*, 25 F.4th 227, 233 (4th Cir. 2022). Here, Plaintiff fails to meet the first prong because he failed to sufficiently allege that Defendant Walker violated his constitutional rights. As Plaintiff cannot meet his burden on the first element, the Court need not address the second, therefore, Defendant Walker is entitled to qualified immunity on this claim.

Accordingly, this Court finds that Plaintiff's federal claims for arrest without probable cause, unreasonable search, retaliatory arrest, deliberately indifferent policies, and supervisory

34

liability are dismissed. Plaintiff's claim for excessive force remains. The Court will now analyze Plaintiff's state law claims.

**D.**  **State Law Claims for Relief**

Plaintiff alleges five claims under North Carolina state law. As the Court has found that one of Plaintiff's § 1983 claims survive, it will exercise supplemental jurisdiction over Plaintiff's claims under state law pursuant to 28 U.S.C. § 1367.

Further, as stated above, the Court has found that probable cause existed to arrest Plaintiff, so his state law claims for false arrest and imprisonment, and malicious prosecution are dismissed as a matter of law. *See City of Dunn*, 708 F. Supp. 3d at 752. Plaintiff's remaining state law claims are assault, battery, and negligence. (*See* ECF No. 1 at ¶¶ 109-120.) These claims are asserted against Sheriff Rodgers in his official capacity, and Defendant Swaringen in his individual capacity. (*Id.*)

Regarding Plaintiff's claims against Sheriff Rodgers, governmental immunity shields municipalities and their officers or employees thereof who are sued in their official capacities from suits based on torts committed while performing governmental functions. *Taylor v. Ashburn*, 436 S.E.2d 276, 278 (N.C. Ct. App. 1993) (citations omitted). Police services and the supervision of police officers constitutes governmental functions in North Carolina. *See Coleman v. Cooper*, 366 S.E.2d 2, 5 (N.C. Ct. App. 1988). Therefore, all state law claims against Sheriff Rodgers in his official capacity are dismissed.

This Court will now analyze Plaintiff's remaining claims against Defendant Swaringen in his individual capacity.

1.  <u>Plaintiff Sufficiently Alleges a Claim of Assault and Battery</u>

Plaintiff asserts claims of assault and battery against Defendant Swaringen in his individual capacity. (ECF No. 1 ¶¶ 109-114.) Defendants move to dismiss these claims as

35

they contend that, "probable cause supported Plaintiff's arrest and the amount of force used by [Defendant] Swaringen was not only reasonable but quite limited." (ECF No. 12 at 26.)

"An assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow." *Dickens v. Puryear*, 276 S.E.2d 325, 330 (N.C. 1981) (citations omitted). To prove a claim of assault and battery against a law enforcement officer, a plaintiff must "show that the officer used force against plaintiff which was excessive under the given circumstances." *Glenn-Robinson v. Acker*, 538 S.E.2d 601, 615 (N.C. Ct. App. 2000) (citations omitted). Although a law enforcement officer is privileged to use lawful force, he is nevertheless liable for assault if he uses force greater than is reasonably necessary under the circumstances. *See Jenkins v. Averett*, 424 F.2d 1228, 1231 (4th Cir. 1970) (applying North Carolina law). The Fourth Circuit has recognized that "the jurisprudence governing Fourth Amendment excessive force actions also controls a party's actions for battery and gross negligence." *Njang v. Montgomery Cnty., Md.*, 279 F. App'x 209, 216 (4th Cir. 2008) (quotations omitted) (citations omitted).

Plaintiff alleges that he endured "grabbing/slamming against a door, applying pain compliance, and striking," at the hands of Defendant Swaringen. (ECF No. 1 at ¶ 110.) Plaintiff states that he was in a reasonable apprehension of immediate harm, and that Defendant Swaringen's actions "constituted harmful and offensive touching." (*Id.* at ¶ 113.) These factual allegations, which must be taken as true, *Iqbal*, 566 U.S. at 678, state a sufficient claim that Defendant Swaringen used excessive force, supporting Plaintiff's claims for assault and battery. Defendants' motion to dismiss, as it pertains to these claims, will be denied.

36

2.     Plaintiff Fails to State a Claim of Negligence

Plaintiff's Complaint alleges a claim of negligence against Defendant Swaringen in his individual capacity.  Defendants contend that this claim should be dismissed as public official immunity bars this claim against Defendant Swaringen in his individual capacity.  (ECF No. 12 at 27.)  Defendants are correct.

For a Plaintiff to hold a public official liable for state common law claims, they must allege and prove corruption or malice.  *Schlossberg v. Goins*, 540 S.E.2d 49, 56 (N.C. Ct. App. 2000) (holding that as public officials, police officer, "enjoy absolute immunity from personal liability for their discretionary acts done without corruption or malice.") (citation omitted). Allegations of negligence when the official is performing governmental duties involving the exercise of discretion is insufficient.  *Campbell v. Anderson*, 576 S.E.2d 726, 730 (N.C. Ct. App. 2003) (finding that public official immunity protects public officials from individual liability for mere negligence in the performance of governmental or discretionary duties) (citation omitted).

As Plaintiff's Complaint alleges facts that occurred while Defendant Swaringen was performing governmental duties, immunity applies.  The Complaint states that Defendant Swaringen owed Plaintiff a duty to perform the duties of Swaringen's commands, "in a manner that would not, directly, or indirectly, unlawfully assault, battery, harm, oppress, harass, and otherwise subject Plaintiff to the conduct alleged in this complaint."  (ECF No. 1 at ¶ 116.) Plaintiff fails to allege that Defendant Swaringen acted with corruption or malice.

For the reasons stated above, the Court finds that Plaintiff's state law claim of negligence is dismissed.

37

### E. Punitive Damages

Finally, Defendants moved to dismiss Plaintiff's request for punitive damages. While Plaintiff requested punitive damages for all his claims, Plaintiff's only surviving claims are excessive force, assault, and battery. Therefore, these are the claims that will be analyzed for punitive damages.

Punitive damages under § 1983 are available for conduct involving "reckless or callous indifference to the federally protected rights of others, as well as for conduct motivated by evil intent." *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987) (internal quotations omitted) (citations omitted). "The callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability on [a] § 1983 claim." *Id.* Under North Carolina law, punitive damages may be awarded when compensatory damages are awarded and one or more of the following factors is present: (1) fraud; (2) malice; or (3) willful or wanton conduct. N.C. Gen. Stat. § 1D-15(a) (2006).

For Plaintiff's claims of excessive force, assault, and battery, this Court finds them sufficient to support a claim for punitive damages. Plaintiff's Complaint alleges facts sufficient to support an inference of wanton conduct under North Carolina law. Wanton conduct is one performed with a "wicked purpose or … done needlessly, manifesting a reckless indifference to the rights of others." *Benton v. Hillcrest Foods, Inc.*, 524 S.E.2d 53, 60 (N.C. Ct. App. 1999) (internal quotations omitted) (citations omitted). Plaintiff alleges that during his arrest, Defendant Swaringen applied pain techniques "by hyper-extending Plaintiff's wrist and crushing Plaintiff's hand with such force as to cause the fingers of the hand being bent to collapse upon themselves." (ECF No. 1 at ¶ 22.) Upon Plaintiff stating that he was in pain, Plaintiff alleges that Defendant Swaringen stated "oh…that's wonderful." (*Id.* at ¶ 23.) Thus,

Plaintiff's Complaint alleges sufficient conduct to grant punitive damages on his claims of excessive force, assault, and battery.

## IV.     CONCLUSION

Accordingly, this Court finds that Plaintiff's claims for arrest without probable cause, unreasonable search, retaliatory arrest, deliberately indifferent policies, supervisory liability, false arrest and imprisonment, malicious prosecution, and negligence should be dismissed. Plaintiff's claims for excessive force in violation of the Fourth Amendment against Defendant Swaringen, assault against Defendant Swaringen, and battery against Defendant Swaringen remain.

For the reasons stated herein, the Court enters the following:

### ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motion to Strike, (ECF No. 20), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to for Delayed Filing, (ECF No. 23), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss, (ECF No. 11), is **GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** in that the following claims are, and shall be, **DISMISSED**: arrest without probable cause, unreasonable search, retaliatory arrest, deliberately indifferent policies, supervisory liability, false arrest and imprisonment, malicious prosecution, and negligence.  The motion is **DENIED** in that the following claims shall survive:  excessive force, assault, and battery.

This, the 11th day of February 2025.

/s/ Loretta C. Biggs
United States District Judge